# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| ROBERTO HUEPA-TECUANHUEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| AMERICAN DOOR & GLASS – | ) | 1:15CV321 |
| SOUTHWEST VIRGINIA, INC., | ) | |
| SKANSKA USA BUILDING, INC., | ) | |
| and SKANSKA USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant American Door & Glass – Southwest Virginia, Inc.'s ("ADG") Motion for Summary Judgment [Doc. #41]. ADG argues that summary judgment is appropriate because the Virginia Workers' Compensation Act bars Plaintiff Roberto Huepa-Tecuanhuey's ("Huepa"[1]) tort claims of negligence based on respondeat superior (entitled "First Claim") and res ipsa loquitur (entitled "Second Claim"). (ADG's Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Br. in Supp.") at 4-10 [Doc. #43].) In the alternative, ADG argues that summary judgment on at least Huepa's res ipsa loquitur claim is appropriate, (id. at 10-12), an argument with which Huepa agrees[2], (Pl.'s Br. in

---

[1] In his brief in opposition to ADG's motion for summary judgment, Plaintiff refers to himself as "Mr. Huepa", (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Br. in Opp'n") at 1 [Doc. #44]); therefore, the Court will do the same.
[2] Specifically, Huepa states, "Given information obtained during discovery . . . Plaintiff will not oppose Defendant's argument that res ipsa loquitur is not viable." (Pl.'s Br. in Opp'n at 2.)

Opp'n at 2). Therefore, the remaining issue is whether or not Huepa's First Claim is statutorily barred. For the reasons explained below, ADG's Motion for Summary Judgment is granted as to his Second Claim based on the theory of res ipsa loquitur and denied as to his First Claim of negligence.

I.

Huepa was injured while working at a construction project at Virginia Polytechnic Institute and State University ("Virginia Tech") in Blacksburg, Virginia. (Dep. Douglas S. Kirsch 8:23-10:5 [Doc. #42]; Emp'r Accident Report [Doc. #44-1]; N.C. Indus. Comm'n Op. & Award at 3 ¶ 3 [Doc. #44-4]; Dep. Robert Picardi 7:8-14, 10:16-11:5 (Feb. 16, 2015) [Doc. #44-5][3].) Skanska USA Building, Inc. and/or Skanska USA, Inc.[4] ("Skanska") was the general contractor of the project and had hired ADG, a Virginia corporation, as the subcontractor for window installation. (Dep. Kirsch 75:5-7; ADG Appl. & Withdrawal of Certificate of Authority [Docs. #44-2, 44-3]; First Am. Compl. ¶¶ 3, 15 [Doc. #26]; Answer to

---

[3] In a footnote in its Reply Brief, ADG notes that Picardi's deposition was taken as part of Huepa's workers' compensation case against his employer and that ADG did not receive notice of the deposition or that it would be used in this action. (See Reply of ADG to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1 n.1 [Doc. #46].) However, Picardi's deposition was taken almost one month before Huepa filed suit against ADG. In addition, ADG does not argue that Picardi's deposition was not disclosed as part of discovery in the instant action. As a result, the Court has considered it, along with the other materials filed in support of and in opposition to the Motion for Summary Judgment.

[4] From the materials before the Court on ADG's Motion for Summary Judgment, it is difficult to tell which Skanska entity was the general contractor. Such a determination, though, is unnecessary for the disposition of this motion. Nevertheless, according to Huepa's voluntary dismissal of the Skanska defendants [Doc. #25], Skanska USA Building, Inc. would have been the general contractor.

2

Am. Compl. ¶ 3; see generally Dep. Kirsch.) In addition, Skanska had hired Espina Stone Company ("Espina"), a Virginia corporation for whom North Carolina-resident Huepa worked as a stone mason, as the subcontractor for stone masonry work at the project. (Emp'r Accident Report at 1; N.C. Indus. Comm'n Op. & Award at 3 ¶ 2; Dep. Picardi 7:15-19, 8:3-16; First Am. Compl. ¶¶ 1, 7, 9, 10.) Espina initially hired Huepa in 2002 in Durham, North Carolina where it had projects at Duke Unversity. (Dep. Picardi 6:22-24.) In addition to projects at Duke and Virginia Tech, Huepa worked on Espina projects at James Madison University, also in Virginia. (Id. 6:24-7:4, 16:10-23.)

On March 19, 2013, at the end of his workday and after having cleaned up his job site, Huepa was walking on the ground level (the second level of the building being constructed) when an ADG-installed glass pane fell from the fourth floor of the building onto Huepa, injuring him. (Emp'r Accident Report at 1-3; N.C. Indus. Comm'n Op. & Award at 2 ¶ 4, 3 ¶ 3; Dep. Picardi 10:16-11:12.) Initially, Huepa filed a claim under the Virginia Workers' Compensation Act, but withdrew that claim and filed for benefits under the North Carolina Workers' Compensation Act (sometimes also referred to as "the North Carolina Act"). (N.C. Indus. Comm'n Op. & Award; Emp'r's Accident Report to Va. Workers' Comp. Comm'n [Doc. #46-1]; Letter to Zurich N.A. (July 12, 2013) [Doc. #46-2]; Letter to Va. Workers' Comp. Comm'n (July 16, 2013) [Doc. #46-3].) By its October 20, 2015 decision, the North Carolina Industrial Commission determined that Huepa and Espina were subject to the North Carolina Workers' Compensation Act and awarded Huepa

3

benefits. (N.C. Indus. Comm'n Op. & Award at 2 ¶ 1, 15 ¶¶ 1-2.)  In the meantime, on March 9, 2015, Huepa filed the instant action in Durham County Superior Court against ADG[5] alleging negligence on the part of its agents and employees. [Doc. #1-1.]  The following month, the case was removed to this Court. [Doc. #1.]

II.

As an initial matter, Huepa notes, almost in passing, in his Brief in Opposition to ADG's Motion for Summary Judgment that he "would point out that Defendant did not comply with Local Rule 56.1, as they [sic] failed to file and serve notice of intention to file a dispositive motion within 14 days following the close of discovery." (Pl.'s Br. in Opp'n at 2.)  Huepa has not sought relief as a result of this alleged rule violation, nor has he suggested what the Court should do in response.

Local Rule 56.1(a) requires that "[a]ny party who intends to file a motion for summary judgment . . . must file and serve notice of intention to file a dispositive motion within 14 days following the close of the discovery period."  All motions for summary judgment and supporting briefs must be filed within thirty days

---

[5] Huepa also sued Skanska USA Building, Inc. and Skanska USA Inc., but voluntarily dismissed both of those defendants on October 27, 2015. [Doc. #25.] The Skanska defendants and Huepa agreed that the North Carolina Workers' Compensation Act was Huepa's exclusive remedy for any claims he may have against Skanska USA Building, Inc., because under the Act, it was considered Huepa's employer and that Skanska USA was not a party to the contract with ADG. (Id.)

4

following the close of the discovery period. L. Civ. R. 56.1(b). "A dispositive motion which is not noticed and filed within the prescribed time will not be reached by the Court prior to trial unless the Court determines that its consideration will not cause delay to the proceedings." L. Civ. R. 56.1(g).

Per the terms of the Joint Rule 26(f) Report, discovery was to be completed by January 4, 2016 and dispositive motions were due February 3, 2016, thirty days later. (See Joint R. 26(f) Report [Doc. #15]; Text Order Adopting Joint R. 26(f) Report with Clarifications, dated June 30, 2015.) On January 29, 2016, eleven days after the expiration of the fourteen-day period within which to file and serve notice of intention to file a dispositive motion, the parties filed a Consent Motion to Extend Mediation Completion Deadline and Motion to Extend Dispositive Motion Deadline ("Consent Motion"). [Doc. #39.] In the Consent Motion, Huepa made no mention of the missed deadline by which ADG should have filed and served its notice of intention to file a dispositive motion. Instead, Huepa and ADG moved the Court for an extension of the deadline by which to file the dispositive motions themselves, which the Court denied (see Text Order dated Feb. 1, 2016). Therefore, on February 3, 2016, the deadline to file dispositive motions, ADG moved for summary judgment. [Doc. #41.]

While it is correct that ADG never filed and served notice pursuant to Local Rule 56.1(a), Huepa did not object to the missed deadline when it asked the Court for an extension of time by which to file dispositive motions. Furthermore, ADG did timely move for summary judgment. Finally, consideration of ADG's motion

5

will not delay the proceedings. Therefore, although ADG is reminded to adhere to the requirements of the Local Rules, under these circumstances, the Court will consider ADG's Motion for Summary Judgment.

III.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(a)." Groves v. Commc'n Workers of Am., 815 F.3d 177, 181 (4th Cir. 2016). ADG argues that summary judgment is appropriate here because the Virginia Workers' Compensation Act bars Huepa's tort action. (Def.'s Br. in Supp. 2-10.) According to ADG, under Virginia law, it is considered a statutory co-employee of Espina and Huepa, and, therefore, the Virginia Workers' Compensation Act is Huepa's exclusive remedy against ADG. (Id. 4-10.) In response, Huepa argues that the Virginia Workers' Compensation Act is inapplicable and that the North Carolina Act does not bar his claim against ADG. (Pl.'s Br. in Opp'n at 3-10.) Therefore, the threshold issue is which state's law applies.

Both parties recognize that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941) superseded by statute on other grounds. Both parties also agree that, in tort actions, North Carolina's Supreme Court "has consistently adhered to the lex loci [delicti] rule[,]" and that "the state where the injury occurred is considered the situs of the claim." Boudreau

6

v. Baughman, 368 S.E.2d 849, 854 (1988). There is also no dispute that Huepa was injured in Virginia. But, this is where the agreements end.

ADG argues that the lex loci rule requires the Court to look at Virginia law to determine if Huepa's negligence claim is statutorily barred. In other words, "[t]he question is how a federal court sitting in diversity jurisdiction would apply Virginia law to choose whether Virginia worker[s'] compensation laws or North Carolina worker[s'] compensation laws would apply." (Def.'s Br. in Supp. at 3.) On the other hand, Huepa argues that, while the lex loci rule requires the Court to apply Virginia law to the negligence claim against ADG, "there exists a particular exception that the laws of North Carolina workers' compensation law control the question of whether a third party claim may be brought." (Pl.'s Br. in Opp'n at 3.) The Court agrees with Huepa.

There is no doubt that if this Court were to consider Huepa's negligence claim against ADG, it would have to apply Virginia law to that tort claim. However, in a case such as this, the Court must first determine if Huepa's negligence claim can even go forward. Faced with this very question, the North Carolina Supreme Court held that the lex loci rule did not apply "in regard to the 'exclusive remedy bar' imposed by statute." Braxton v. Anco Elec., Inc., 409 S.E.2d 914, 915 (N.C. 1991). In Braxton, the plaintiff, a North Carolina employee of a North Carolina subcontractor, was injured at a Virginia construction site by another North Carolina subcontractor. Id. at 914. The plaintiff received benefits pursuant to the North Carolina Workers' Compensation Act for his injuries. Id. at

7

914-15. When he then sued the other North Carolina subcontractor for negligence, the trial court granted the defendant's motion to dismiss when it held that Virginia substantive law barred the action. Id. at 915. The Court of Appeals reversed, and the Supreme Court affirmed, but for different and additional reasons than the Court of Appeals. Id.

The Supreme Court recognized that "since the injury occurred in the Commonwealth of Virginia, the case presents a conflict of laws question as to which state's compensation law to apply in determining whether plaintiff's cause of action is barred." Id. Facing this "novel question of first impression[,]" the court "[did] not hesitate in holding that as to the tort law controlling the rights of the litigants in the lawsuit allowed by this decision, the long-established doctrine of lex loci delicti commissi applies, and Virginia law controls." Id. However, "in regard to the 'exclusive remedy bar' imposed by statute," the court held that "[t]o determine whether the law says that plaintiff, in return for collecting workers' compensation benefits, has traded away his right to sue in this situation, we look to the law which guarantees his receipt of those benefits, which [in this case] is the law of North Carolina." Id. The court explained that the plaintiff was the beneficiary of a bargain which North Carolina "struck between the rights of employees as potential plaintiffs seeking to recover in tort for work-related injuries and the rights of employers and third-parties as potential tortfeasors seeking to escape liability by virtue of the blanket provision of compensation for such injuries." Id. The plaintiff's temporary presence in Virginia for employment "does not strip him of the

rights he otherwise enjoys under the North Carolina workers' compensation statute with regard to the breadth of our state's exclusive remedy bar on common law actions in tort." Id. at 916. Under the facts of Braxton, public policy considerations also supported this conclusion, because all of the parties were North Carolina citizens, all contracts were signed in North Carolina, and the plaintiff was receiving benefits under North Carolina's workers' compensation statute. Id.

More recently, the North Carolina Court of Appeals applied Braxton to find that Indiana's Workers' Compensation Act applied to the question of whether or not the plaintiffs' tort claims were barred. In Burton v. Phoenix Fabricators & Erectors, Inc., 670 S.E.2d 581, 582 (N.C. Ct. App. 2009), the widows of employees of an Indiana corporation who worked out of the Indiana office but were killed while working in North Carolina brought wrongful death actions alleging intentional tortious conduct. The workers' estates were paid benefits pursuant to the Indiana Workers' Compensation Act. Id. The defendant argued that by accepting benefits under the Indiana Workers' Compensation Act, the plaintiffs' actions were barred. Id. at 583. On the other hand, the plaintiffs argued that the lex loci rule required North Carolina law to apply.[6] Id. To determine which state's law applied to the issue of whether or not the action was barred, the Court of Appeals looked to Braxton and explained, "[T]he law of the state providing the

---

[6] The plaintiffs further argued that the application of North Carolina law allowed their actions to proceed under Woodson v. Rowland, 407 S.E.2d 222 (N.C. 1991).

9

workers' compensation benefits determines whether the workers' compensation statute of that state provides an exclusive remedy barring additional recovery through a tort action." Id. at 584. Therefore, because the plaintiffs' husbands were covered by the Indiana Workers' Compensation Act and the plaintiffs had each received significant amounts of benefits "as beneficiaries of the particular bargain that Indiana struck between employers and employees[,]" the court found that Braxton required it to look at the law of Indiana to determine whether the plaintiffs' action was barred. Id.

Although initially applying the Federal Tort Claims Act ("FTCA") to its choice of law analysis[7], the Fourth Circuit has had occasion to apply Braxton, as well. In Eades v. United States, 168 F.3d 481, *1 (1999) (unpublished), the plaintiff, a South Carolina resident and employee of a South Carolina company, was injured while working at a Veterans Administration hospital in North Carolina. Because the employer's contract with the hospital required the employer to provide workers' compensation insurance in accordance with North Carolina law, it purchased a policy in South Carolina. Id. After his injury, the plaintiff filed for and received benefits in South Carolina. Id. He then sued the hospital in South Carolina. Id.

---

[7] Although not at issue here, the Fourth Circuit explained that the FTCA allows suits against the federal government "'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Eades v. United States, 168 F.3d 481 *2 (1999) (unpublished) (quoting 28 U.S.C. § 1346(b)(1)).

10

After finding that North Carolina choice of law rules applied under the FTCA[8], the court examined Braxton. Id. at *2.

> Under North Carolina choice-of-law rules, when an employee is covered by workers' compensation, his right to sue a third party in tort is governed by the workers' compensation law of the State where he is based. Braxton[], 409 S.E.2d [at 915]. To determine which State that is, North Carolina considers where that employee usually works, where he resides and is domiciled, where his contract of employment was made, and where he has received workers' compensation benefits (if he has received such). This last factor appears to be the most important. See id. at 915-16.

Eades, 168 F.3d at *2. Because the plaintiff's contract of employment was entered into in South Carolina, he resided there, his employer was based there, he did most of his work there, and he collected benefits there, the court found that Braxton required South Carolina law to apply. Id. In so doing, the court "acknowledge[d] that this rule flies in the face of the normal rule of lex loci delicti for tort suits, a rule to which North Carolina generally has a 'steadfast commitment[.]'" Id. (citation omitted). However, according to the Fourth Circuit, the Braxton court "was well aware of this, and consciously bifurcated the choice-of-law question." Id. (noting that after the Braxton court acknowledged the "long established doctrine" of lex loci that "it laid down the exception for the 'exclusive remedy bar' of workers' compensation . . . over a dissent that argued for application of lex loci wholesale").

---

[8] The court found that North Carolina law applied under the FTCA because the plaintiff was injured there. Eades, 168 F.3d at *2.

11

Applying Braxton here, the North Carolina Workers' Compensation Act, not the Virginia Workers' Compensation Act, governs the question of whether or not Huepa's negligence claim is barred.  Certainly, several factors connect Huepa to Virginia.  He was employed by a Virginia company and has sued a Virginia company; he was injured there; he had worked on other projects for Espina there; and he initially filed for benefits under the Virginia Workers' Compensation Act.  However, other factors, including the most important factor, support a finding that North Carolina law applies.  Huepa is a North Carolina resident, and, according to Espina, it "first hired Roberto . . . in Durham, North Carolina, where [it] had projects at Duke University[,]" strong support that Huepa's employment contract was entered into in North Carolina.  Most importantly, pursuant to the decision of the North Carolina Industrial Commission, Huepa has been receiving benefits under the North Carolina Workers' Compensation Act.  Substituting Huepa for Braxton, it can also be said that "[Huepa's] temporary presence in Virginia so as to carry out his employment contract does not strip him of the rights he otherwise enjoys under the North Carolina workers' compensation statute with regard to the breadth of our state's exclusive remedy bar on common law actions in tort." Braxton, 409 S.E.2d at 916.  Therefore, it is determined that North Carolina law applies to the question of whether Huepa's tort claim against ADG is barred.

IV.

Having determined that North Carolina law applies, the next issue is whether it bars Huepa's negligence claim against ADG.  When an employee and employer

12

are subject to and have complied with the North Carolina Workers' Compensation Act, it is the injured employee's exclusive remedy against his employer. N.C. Gen. Stat. § 97-10.1 (2015) (explaining that the rights and remedies of an employee under the North Carolina Act "shall exclude all other rights and remedies of the employee . . . as against the employer at common law or otherwise on account of such injury or death"). In addition to the general definitions of "employee" and "employment" in North Carolina General Statute § 97-2, North Carolina General Statute § 97-19, known as the "statutory employer" statute, provides, in part,

> Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without obtaining from such subcontractor or obtaining from the Industrial Commission a certificate . . . stating that such subcontractor has [obtained workers' compensation insurance] . . . shall be liable . . . to the same extent as such subcontractor would be if he were subject to the provisions of this Article for payment of compensation and other benefits . . . on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of work covered by such subcontract.

According to the North Carolina Court of Appeals, the legislature enacted § 97-19

> to deliberately bring specific categories of conceded nonemployees within the coverage of the Act for the purposes of protecting such workers from financially irresponsible sub-contractors who do not carry workmen's compensation insurance, and to prevent principal contractors, intermediate contractors, and sub-contractors from relieving themselves of liability under the Act by doing through sub-contractors what they would otherwise do through the agency of direct employees.

Cook v. Norvell-Mackorell Real Estate Co., 392 S.E.2d 758, 759-60 (1990). As a result, a general contractor is considered to be a statutory employer of a

13

subcontractor's employee when "the injured employee [is] working for a subcontractor doing work which has been contracted to it by a principal contractor" and "the subcontractor does not have workers' compensation insurance coverage covering the injured employee." Rich v. R.L. Casey, Inc., 454 S.E.2d 666, 667 (N.C. Ct. App. 1995); see also, e.g., Robertson v. Hagood Homes, Inc., 584 S.E.2d 871 (N.C. Ct. App. 2003). In such a case, recovery of workers' compensation benefits through the general contractor's workers' compensation carrier is the exclusive remedy for an injured subcontractor's employee. Rich, 454 S.E.2d at 667, 668 (N.C. Ct. App. 1995).

However, the North Carolina Supreme Court has explained that North Carolina courts "have deemed . . . a [third-party] subcontractor not to be a 'statutory employer'" of another subcontractor's injured employee. Braxton, 409 S.E.2d at 915 (emphasis added). As a result, a third-party subcontractor is "not shielded from liability by the 'exclusive remedy bar' of our workers' compensation statute" and, therefore, "an employee who is injured by the negligence of a third-party subcontractor may bring a negligence action against that subcontractor[.]" Id.

Here, ADG was hired by Skanska as a subcontractor for window installation at the Virginia Tech project, while Espina was hired as a subcontractor for stone masonry work. As a third-party subcontractor, under North Carolina law, ADG is not Huepa's statutory employer. Therefore, it is not shielded from tort liability by

14

the exclusive remedy bar of North Carolina's Workers' Compensation Act. Huepa's claim of negligence against ADG may proceed.

IV.

For the reasons stated herein, IT IS HEREBY ORDERED that Defendant American Door & Glass – Southwest Virginia, Inc.'s Motion for Summary Judgment [Doc. #41] is GRANTED IN PART as to Huepa's Second Claim based on the theory of res ipsa loquitur AND DENIED IN PART as to Huepa's First Claim based on negligence.

This the 14th day of June, 2016.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge